**UNITEDS STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **GENERAL CREDIT ACCEPTANCE** | ) | |
| **COMPANY, LLC,** | ) | |
| | ) | **Case No. 4:13-CV-524** |
| **Counterdefendant,** | ) | |
| **v.** | ) | **Removed from the Twenty-First** |
| | ) | **Judicial Circuit Court, St. Louis** |
| **DAVID DEAVER,** | ) | **County, Missouri** |
| | ) | **Case No. 11SL-AC2887** |
| **Counterclaimant.** | ) | **Division: 42M** |

**COUNTERDEFENDANT GENERAL CREDIT ACCEPTANCE COMPANY, LLC'S**
**NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. §§ 1332(d), 1446(b)(3) and 1453, Counterdefendant General Credit

Acceptance Company, LLC ("GCAC") hereby removes this action to the United States District

Court for the Eastern District of Missouri.  As grounds for this relief, GCAC states:

1.      This Court has original jurisdiction of this putative class action pursuant to the

Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), and the action is removable pursuant

to 28 U.S.C. §§ 1446(b)(3) and 1453, in that many members of the Class are citizens of a State

other than the state of Plaintiff's citizenship and the amount at issue exceeds $5,000,000.00,

exclusive of interest and costs.

**BACKGROUND**

2.      Since April, 2005, Car Credit City, LLC, has been in the business of selling of

used motor vehicles.  Used motor vehicles were generally sold on credit under Car Credit City's

the Retail Installment and Security Agreement.  Upon default in making an installment payment,

the account is assigned to GCAC to provide the requisite notices of default, repossess the

vehicle, send a notice of our plan to sell property at private sale, sell the motor vehicle, provide the car buyer with a statement of sale and bring an action to collect the deficiency judgment.

3.      In this case, GCAC brought a claim for deficiency judgment in the Twenty-First Judicial Circuit Court, St. Louis County, Missouri, Case No. 11SL-AC2887, Division 42M. Defendant/Counterclaimant David Deaver filed an Answer and a Counterclaim.  Leave was granted to file the Counterclaim on May 7, 2012.  The core of Deaver's Counterclaim is that GCAC in its "Notice of Our Plan to Sell Property" failed to comply with Uniform Commercial Code §§ 9-612 and 9-614(3) because the notice was "misleading."[1]   The Counterclaim is attached and incorporated as Exhibit C.

4.      In the Notice of Our Plan to Sell Property attached to the Counterclaim the date of repossession contains a typographical error as to the Repossession Date.  This typographical error was an anomaly.  Instead of typing December 19, 2006, which was the actual date of repossession, on the Pre-Sale Notice attached to the Counterclaim the repossession date was erroneously typed as December 9, 2006.

5.      In his Counterclaim, Deaver seeks damages pursuant to Uniform Commercial Code § 9-625(c)(2), for himself and the putative class, in an amount not less than the credit service charge (the amount financed) plus ten percent of the principal amount (the price of the motor vehicle) for each misleading Pre-Sale Notice.  However, the Counterclaim did not specify

---

[1] The Counterclaim also alleged a violation based on an alleged violation of § 400.0-2511 on the bases the Pre-Sale Notice was not signed.  All Pre-Sale Notices had GCAC's letterhead and it is well established that a letterhead constitutes authentication under the UCC.  See, e.g., *Zemco Mfg., Inc. v Navistar Int'l Trans. Corp.*, 186 F.3de 815, 821-22 (7th Cir. 1999); *Monetti v Anchor Hocking Corp.*, 931 F.2d 1178, 1182, 1185 (7th Cir. 1981); *Assoc. Home and RV Sales Inc. v R-Vision, Inc.*, 2006 WL 4109674 at *5 (D.N.M. July 13, 2006); *D'Amato Investments, LLC v Rans*, 2008 WL 4020902 *2 (Conn. Super. August 4, 2008).  The GCAC Notice form had GCAC's letterhead and, thus, fully complied with § 400-9-611, rendering this allegation spurious.  As such this part of claim does not and could not form a good faith basis for removal.

an "amount of damages" claimed.  Rather it simply stated:  "awarding damages to Deaver and the class as provided by the UCC."

6.      GCAC immediately investigated the facts behind the Pre-Sale Notice with a typographical error.  GCAC only has two employees, one of whom prepared the Pre-Sale Notices.  Matt J. Means was employed by GCAC from March 2005 until May 2012.  One of his job duties was preparing GCAC's Notice of Our Plan to Sell Property and he prepared virtually all the Pre-Sale Notices in the class period.  Matt Means Affidavit explains that the language contained in GCAC's Notice of Our Plan to Sell Property form is taken directly from Missouri Uniform Commercial Code § 400.9-614.  GCAC uses Auto Star Solutions Software to prepare the Notice of Our Plan to Sell Property.  Human data entry is required only to input three dates: the date of the notice, the date of the repossession and the date which the collateral will be sold.  Affidavit of Matt Means attached and incorporated as Exhibit A hereto.

7.      In his Affidavit Means explains that he prepared the Pre-Sale Notice that was sent to Counterclaimant Deaver.  Means prepared that document on December 19, 2006, the date of repossession.  However, he admittedly made a typographical error inputting the date of repossession on the Notice, typing in December 9, 2006, instead of the correct date of December 19, 2006.  Matt Means states that he corrected the typographical error and that he sent a correct notice to Counterclaimant Deaver.

8.      Irrespective of whether a corrected Pre-Sale Notice was, or was not, sent to Counterclaimant Deaver, GCAC's investigation revealed that the typographical error in the notice that Deaver attached to his Counterclaim was a singular anomaly or, at most, a very rare occurrence.  Accordingly, under the allegations pled in the Counterclaim concerning it would be remarkable, indeed, if damages for the few notices that had typographical errors, if any others

3

exist, during the class period would even exceed Thirty Thousand Dollars.  Assuming *arguendo* the allegations in the Counterclaim are true as to Deaver's Pre-Sale Notice, Deaver's damages would be $6,466.50.

9.      Under 28 U.S.C. § 1332(d) a class action is removable if any member of the class of plaintiffs is a citizen of the State different from any defendant and the amount in controversy exceeds $5,000,000.00, exclusive of interest and costs.  Because GCAC determined that typographical errors in the Pre-Sale Notice were a rare occurrence, GCAC could not remove the Counterclaim when it was filed, because GCAC cold not meet its burden to establish the jurisdictional amount by a preponderance of the evidence.  *Trimble v Asarco*, 232 F.3d 946, 949 (8th Cir. 2000); *Advance Am. Servicing of Ark, Inc. v McGinnis*, 346 F.3d 1170, 1173 (8th Cir. 2008).  The Eighth Circuit rejected the liberal standard of "reasonable probability" to prove the jurisdictional amount and requires a higher standard – "preponderance of the evidence."  *Bell v The Hershey Company*, 557 F.3d 993, 959 n. 6 (8th Cir. 2009).

10.      When the Counterclaim does not establish the amount in controversy for CAFA removal, removal can be a complex task as the party seeking to remove cannot make the counterclaimant's claim for him.  *Bell v The Hershey Company*, 557 F.3d 953, 956 (8th Cir. 2009).  A removing party must act in good faith and cannot base a calculation of jurisdictional amount on speculation or conjecture; rather, a removing party must put forth credible evidence of jurisdictional amount. *Bartini Kowski v NVR, Inc.*, 307 Fed. Appx. 730, 737 (4th Cir. 2009); *Krivonyak v. Fifth Third Bank*, 2009 WL 2392092 *5 (S.D.W. Va. 2009); *St. Paul Reinsurance Co. v Greenburg*, 134 F.3d 1250, 253 (5th Cir. 1998).

11.      On February 26, 2013, Counsel for Counterclaimant Deaver sent a Settlement Demand Letter, seeking $10,000,000 to settle the Counterclaim.  In the text of the Settlement

Demand Letter, Counterclaimant Deaver estimated actual Uniform Commercial Code Statutory Damages for the six year class period at $30,400,000.00.  A copy of the Settlement Demand Letter is attached as Exhibit B.

12.      Of greater significance is the fact that the Settlement Demand Letter set forth a new theory of liability against GCAC.  The demand alleged a new purported defect in GCAC's Notice of Our Plan to Sell Property.  The Notice requires the car buyer to redeem the collateral with "cash, a certified check or a money order payment."  In the Letter, Counterclaimant Deaver contends that requiring cash or other certified funds to redeem was unreasonable as a matter of law because that form of payment was not required in the Retail Installment Contract and Security Agreement.

13.      The effect this new theory of liability is that "**every**" Notice of Our Plan to Sell Property" sent by GCAC over the six year class period would be at issue in the litigation.  The Settlement Demand Letter establishes that 5,029 Pre-Sale Notices are at issue and damages could be estimated at $6,047 per Pre-Sale Notice under Deaver's new theory of liability in the Settlement Demand Letter.

14.      While the new theory is of questionable viability, under Counterclaimant Deaver's calculation, damages could be approximately $30,400,000.00.

## DIVERSITY

15.      For purposes of diversity GCAC is a citizen of Missouri.

16.      Counterclaim Defendant Deaver was at the time of the purchase of the motor vehicle and at the time of the Pre-Sale Notice a citizen of Missouri. On information and belief he is still a resident of Missouri.

17.     The Plaintiff's "Putative Class" consists of all persons who are buyers on a loan financing agreement assigned to GCAC whose collateral was repossessed and disposed of from January 27, 2006 to the present – May 7, 2012.  In other words, it includes all car buyers who received a Notice of Our Plan to Sell Property from January 27, 2006 to the date the Counterclaim was filed on May 7, 2012.

18.     Car Credit City, LLC sells used motor vehicles during the class period at dealerships in both Missouri and in Illinois.  During the class period it had dealerships in Alton and O'Fallon, Illinois and Bridgeton, Eureka and Herculaneum, Missouri.  Many car buyers at the Missouri locations are citizens of Illinois and most of the car buyers at the Illinois location are citizens in Illinois.  Thus, the Plaintiff class would consist of both Missouri and Illinois Citizens and Counterdefendant GCAC is a Missouri citizen.  Accordingly, there is minimal diversity under CAFA 28 U.S.C. § 1332(d)(2)(A).

### AMOUNT IN CONTROVERSY

19.     Under CAFA, a District Court "shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest of class."

20.     CAFA also provides that in any class action, the claims of the individual class members shall be "aggregated" to determine whether the matter in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs.  28 U.S.C. § 1332(d)(6).  Based on the damages chart on page 2 of Counterclaimant Deaver's Settlement Demand Letter dated February 26, 2013, Counterclaimant's class is seeking damages in this matter that exceeds $30,400,000.  Based on Counterclaimant's alleged new theory liability, all of GCAC's Notices of Our Plan to Sell Property would be at issue for the six year class period.  Thus, Counterclaimant's creative

new theory, although legally suspect, supports the calculation of damages in the Settlement Demand Letter.

### COUNTERCLAIMANT'S FEBRUARY 26, 2013 SETTLEMENT DEMAND CONSTITUTES AN "OTHER PAPER" FOR REMOVAL PURPOSES

21.     Under CAFA "if the case stated by the initial pleading is not removable, a Notice of Removal "may be filed within thirty days after receipt by Defendant, by service or otherwise, of a copy of an Amended Pleading, Motion, Order or **other paper** from which is may first be ascertained that the case is one which is or has become removable."  28 U.S.C. § 1446(d)(b)(3).

22.     In a removal based on diversity, the proponent of Federal jurisdiction bears the burden of proving by a preponderance of the evidence that the amount in controversy satisfies the jurisdictional minimum.  *Advance Am. Servicing of Ark., Inc. v McGinnis*, 346 F.3d 1170, 1173 (8th Cir. 2008); *Trimble v ASARCO., Inc.*, 232 F.3d 946, 949 (8th Cir. 2000), *abrogated on other grounds by, Exxon Mobile Corp. v Allapattah, Servs., Inc.*, 545 U.S. 546 (2005); see also, *In re Minn. Mut. Life Co. Sales Practices Litig.,* 346 F.3d 830, 834-35 (8th Cir. 2003).

23.     Based on the Settlement Demand Letter of February 26, 2013 there is no question that Counterclaimant has finally valued their Counterclaim as potentially in excess of $30,000,000.

24.     In *Addo v The Globe Life and Accident Ins. Co.*, 230 F.3d 759, 761-62 (5th Cir. 2000), the Fifth Circuit Court of Appeals held that a demand letter constituted an "other paper" within the meaning of the removal statute.  In *Kreinbring v The Alternative Claims Services, Inc.*, 2004 W.L. 1293927 (N.D. Iowa May 27, 2004) the Court held that demand letters can constitute an "other paper" within the meaning of § 1446(b) in reaching the conclusion that the letter satisfied the jurisdictional amount for removal.  Other cases where Courts found that a

Settlement Demand constituted "other papers" that triggered removable are:  *Cohn v The Petsmart, Inc.*, 281 F.3d 827, 840 (9th Cir. 2002) (a settlement letter is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of Plaintiff's claim;" *Vermande v Hyandai Motor AM, Inc.*, 352 F.Supp.2d 195, 200-01(D. Conn. 2004); (although the Second Circuit does not address this issue, most Courts have held – and this Court agrees – that § 1446(b) is not limited to the papers filed in a litigation and that the reference to "other paper" in the statute can include pre-removal correspondence between the parties, including, as here, settlement offers);" *Hall v Delta Airlines, Inc.*, 340 F.Supp.2d 596, 599 (D. Virgin Islands 2004) ("correspondence between counsel, including a settlement demand letter, may constitute an "other paper" upon which removable can be based under § 1446(b));" *Archer v Kelly,* 271 F.Supp.2d 1320, 1322 (N.D. Okla. 2003) (finding a demand letter disclosing Plaintiff's damages exceed the jurisdictional minimum with sufficient proof of the amount in controversy, regardless of the fact that Defendant rejected the offer); *Martin v Mentor Corp.*, 142 F.Supp.2d 1346, 1349 (M.D. Fla. 2001) ("Defendants may use a variety of documents including a written Settlement Demand as "other paper" under 28 U.S.C. § 1446(b) to determine if the case is removable."

25.     In the Eighth Circuit in *In re Willis*, 228 F.3d 896 (8th Cir. 2000) (per curiam) reversed a Remand Order of the District Court specifically finding that the 30-day time limit of § 1446(b) begins running upon receipt of the initial Complaint **only when the Complaint (Counterclaim) explicitly discloses the Plaintiff (Counterclaimant) is seeking damages in excess of the Federal jurisdictional amount**. Id.   The Eighth Circuit stated that this rule "promotes certainty and judicially efficiency by not requiring Courts to inquire into what a particular Defendant may or may not subjectively know."   Id.   Further, the rule prevents a

Plaintiff from disguising the amount of damages until the 30-day time limit as run to avoid removable to Federal Court.

26.      *In Lapree v The Prudential Financial,* 385 F.Supp.2d 839 (F.D. Iowa 2005) the Court, relying on *In re Willis,* reasoned that the Plaintiff must affirmatively disclose the amount in controversy to trigger the 30-day removal period and that a Settlement Demand Letter in the case constituted an "other paper" which provided the necessary affirmative proof that the jurisdictional amount was satisfied in accordance with 28 U.S.C. § 1446(b).  385 F.Supp.2d at 850.

## **PROCEDURAL COMPLIANCE**

27.      Removal to this Court is proper pursuant to 28 U.S.C. § 1446(a), in the action was filed in the Circuit Court of St. Louis County, Missouri, which is within this District and Division.

28.      Counterclaimant Deaver first affirmatively disclosed the amount in controversy to trigger the 30-day removal period by sending a Settlement Demand Letter, dated February 26, 2013.  Pursuant to 28 U.S.C. § 1446(b)(3) that settlement demand letter constituted an "other paper" which triggered the 30-day time period to file a Notice of Removal.  This Notice of Removal is filed within 30 days of the February 26, 2013 Settlement Demand Letter and, thus, is timely.  The February 26, 2013 Settlement Demand Letter is attached and incorporated as Exhibit B.

29.      The complete St. Louis County Circuit Court file is attached and incorporated as Exhibit C.

30.      The Counterclaim is attached as Exhibit D.

WHEREFORE, GCAC hereby removes this action to the United States District Court for

the Eastern District of Missouri.

BROWN & JAMES, P.C.

/s/ Timothy J. Wolf
Russell F. Watters,      #25758
Timothy J. Wolf,      ##53099
Robert L. Carter,      #31699
800 Market Street, Ste. 1100
St. Louis, Missouri 63101-2501
314-421-3400; 314-421-3128 – FAX
rwatters@bjpc.com
twolf@bjpc.com
rcarter@bjpc.com
*Attorneys for Counterclaim-Defendant GCAC*

10

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing was sent electronically via the Court's electronic filing system, this 20th day of March, 2013, which will send notification of such filing to:

Martin L. Daesch
Jesse B. Rochman
Sandberg Phoenix & von Gontard PC
600 Washington Avenue, 15th Floor
St. Louis, MO 63101
314-231-3332; 314-241-7604 (fax)
mdaesch@sandbergphoenix.com
jrochman@sandbergphoenix.com
*Attorney for Counterclaimant Defendant Deaver*

William F. Whealen, Jr.
Miller & Steeno, P.C.
11970 Borman Drive, Ste. 250
St. Louis, MO 63146
wwhealen@millersteeno.com
*Attorneys for Plaintiff GCAC*

/s/ Timothy J. Wolf

11080322