**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GENERAL CREDIT ACCEPTANCE COMPANY, LLC, | ) ) ) | Case No. 4:13-CV-524-ERW |
| Counterdefendant, | ) ) | |
| v. | ) ) | Removed from the Twenty-First Judicial Circuit Court, St. Louis |
| DAVID DEAVER, | ) ) | County, Missouri Case No. 11SL-AC2887 |
| Counterclaimant. | ) | Division: 42M |

**GENERAL CREDIT ACCEPTANCE COMPANY, LLC'S MEMORANDUM OF LAW IN OPPOSITION TO DAVID DEAVER'S MOTION FOR SANCTIONS, AND <u>REPLY IN SUPPORT OF ITS MOTION TO STAY</u>**

General Credit Acceptance Company, LLC ("GCAC") respectfully submits the following Memorandum of Law in Opposition to David Deaver's ("Deaver") Motion to for Sanctions, and Reply in support of GCAC's motion to stay or suspend the state court discovery schedule.

**INTRODUCTION**

GCAC has moved to stay or suspend the state court discovery orders and schedule in this action, pending this Court's setting of a new schedule in accordance with Rules 16 and 26 of the Federal Rules of Civil Procedure in this removed action. GCAC contemplated that the parties would confer, arrive at a joint proposed scheduling order and submit it to the Court for its consideration, all in the ordinary course, and that this Court would determine the sequencing and scope of discovery and dispositive motions, in furtherance of CAFA's intent that large class actions be litigated in federal court, pursuant to federal procedure.

Deaver has responded to GCAC's motion in two ways. First, Deaver filed a response agreeing with GCAC's motion in as much as it would apply to scheduling orders requiring action by Deaver --  as, for example, the order requiring Deaver to file its motion seeking class action

certification by last week, on April 15, which Deaver did not do.  Deaver uses this purported agreement as justification for its own failure to abide by the state court scheduling order.  Second, Deaver filed a motion for sanctions against GCAC, for supposedly violating a court order.  Deaver's papers throughout contain a familiar litany of criticism of GCAC for supposed delay, evasion, dilatory conduct, etc.

Deaver's motion for sanctions should be denied. GCAC has violated no court order, but simply has sought in good faith and by reasonable means to secure the determination by this Court of the "future course of proceedings" in this case, now that it has been removed to federal court.  Such a determination is permitted by the Federal Rules and long-standing case authority, and is of heightened importance here, in order that the purposes of CAFA not be undermined.

**BACKGROUND**

In this removed action Deaver asserts a putative class action of all persons who have had their automobiles repossessed by GCAC in a six-year period.  The original gravamen of Deaver's class action complaint, made by way of counterclaim, was two-fold: first, that GCAC's pre-sale notice to him was misleading, in that it contained a typographical error -- giving the date of "December 09" instead of "December 19" for the date of repossession – thus making the announced pre-sale notice period given to Deaver too short by 10 days.  (Deaver ¶ 15.a, and Ex. A thereto).  Second, that the pre-sale notice was not authenticated by GCAC, as required by section 9-611(b). (Deaver ¶ 15.b, and Ex. B thereto).

In October, 2012, GCAC filed a motion for summary judgment, showing that Deaver's claims were without foundation.  First, evidence showed that the typographical error on Deaver's notice was an isolated inadvertence, promptly corrected.  (GCAC does not believe that that the notice with the mistyped date was ever sent to Deaver; it, and the corrected notice GCAC

believes it did send, were both in GCAC's files and produced to Deaver in discovery). Second, all GCAC pre-sale notices are on GCAC letterhead, and therefore do not need to be signed, according to well-settled law construing the UCC. Thereafter, the state court entered a scheduling order indicating it would not entertain GCAC's motion for summary judgment until after discovery and a class certification hearing. Deaver has never responded to the motion for summary judgment. Far from delaying, then, GCAC has sought for many months to have the legal merits of Deaver's claims promptly tested, but has been stymied in those efforts.

In a letter dated February 26, 2013, Deaver's counsel announced a new, third, theory: that the pre-sale notice GCAC sent to buyers in default violates the Uniform Commercial Code, in that the notice states that a borrower in default is "required to use cash or other certified funds to redeem." (Deaver demand letter, attached to Notice of Removal, at 1). Deaver claims that the requirement that a debtor in default pay off its debt in certified funds in order to redeem its collateral violates the UCC, because it is not contained in the retail installment contract or otherwise authorized by the UCC.

Deaver made no attempt to amend his class action complaint to assert this new claim, apparently relying on a general and formulaic allegation that GCAC's pre-sale notices to Deaver and the class "include[] additional language or content not authorized or allowed by law, rendering the presale notices misleading or unreasonable in violation of §§ 9-610 and 9-614 of the UCC." (Class action complaint, ¶ 49) Other than this bare allegation, Deaver's complaint makes no attempt to identify the supposedly offending language, or the way in which it is misleading or violates the law.

As with Deaver's other theories, this new claim is legally deficient. In *Mancuso v. Long Beach Acceptance Corp.*, 254 S.W.3d 88 (Mo. App. W.D. 2008) (emphasis added), actually cited

3

by Deaver in his demand letter, the Missouri Appellate Court held that, as matter of law, a pre-sale notice with the following language was lawful under UCC section 400.9-623:

> "In addition to paying us the full amount you owe to get the vehicle back (**payment in certified funds**), you will also be required to provide us with proof of proper insurance coverage, and you may be required to provide us with proof that all checks ... you have already issued to us ... in the last 30 days have cleared....."

Section 9-623 ("Right to redeem collateral") provides (emphasis added):

> "(a) A debtor, any secondary obligor, or any other secured party or lienholder may redeem collateral.
> (b) *To redeem collateral, a person shall tender*:
> (1) *Fulfillment of all obligations secured by the collateral*; and
> (2) The reasonable expenses and attorney's fees described in section 400.9-615(a)(1)."

The official Comment to this provision states (emphasis added):

> "To redeem the collateral a person must tender fulfillment of all obligations secured, plus certain expenses. If the entire balance of a secured obligation has been accelerated, it would be necessary to tender the entire balance. *A tender of fulfillment obviously means more than a new promise to perform an existing promise*. It requires payment in full of all monetary obligations then due and performance in full of all other obligations then matured."

It is a commercially reasonable and widespread practice, both by businesses and governments, to require something more than an unsecured promise from a party seeking to take back repossessed collateral or to release a lien after the party's default. (This federal district court will not permit the posting of bail by such means). The UCC makes clear that tender of a personal check is just such an unsecured promise. (§ 3-104: a check is a "promise or order to pay" which depends for certainty of actual payment on the resources of the promisor on deposit with the drawee bank). Therefore it is insufficient to satisfy the requirement, that all obligations be fulfilled, contained in section 9-623 ("tender of fulfillment obviously means more than a new promise to perform an existing promise"), and the requirement of certified funds for redemption

4

after default cannot violate the UCC. (GCAC intends to file a motion seeking to dismiss this third claim as a matter of law at the earliest opportunity permitted by the Court).

Three weeks after being informed in writing by Deaver's counsel that Deaver was proceeding upon this new "certified funds" theory, and seeking an amount in excess of the jurisdictional limits, GCAC removed to this Court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d) and 1453(b).

**1.     Deaver's Motion for Sanctions is Without Legal or Factual Basis.**

For the second time a few short weeks Deaver seeks the imposition of sanctions by this Court against GCAC (the first time was for GCAC's removal of this action pursuant to CAFA). In addition, Deaver seeks the most extreme sanction available for its asserted violation: the entry of default judgment, which is available only for willful disobedience of an order.  GCAC asks that the Court take into account the overreaching nature of Deaver's ill-considered request for entry of default in assessing the accuracy of Deaver's other assertions.

Deaver premises his motion for sanctions on this statement of purported fact (Deaver's sanctions brief at 2):  "To date, GCAC has refused to provide court ordered discovery.  Thus, GCAC is disobeying a discovery order of this Court." This statement is untrue. GCAC has not disobeyed any order of this Court, or of the state court.  A motion seeking relief from an order does not constitute disobedience of an order, and it is not sanctionable conduct to ask a federal district court judge to apply the federal rules to discovery in a case that is now in federal court. Ironically, Deaver himself is the only party in this case to ignore an order – the order that Deaver file his motion for class certification by April 15, 2013 – without making a motion seeking relief from the order.

5

**2.     This Court Has the Power, and Under CAFA the Duty, to Issue New Discovery and Scheduling Orders.**

This Court clearly has the right to dissolve or modify the state court discovery and scheduling orders, as 28 U.S.C. § 1450 specifically states, and as long-standing case authority directs. In *Ex Parte Fisk*, 113 U.S. 713, 725 (1885), the removed plaintiff argued that an order issued by a state court prior to removal, requiring the removing defendant to be deposed, was binding in federal court notwithstanding its inconsistency with federal discovery statutes. The U.S. Supreme Court rejected this argument. It noted that the federal statute specifically authorized orders of a state court to remain in effect "until dissolved or modified" by the federal court. The Court construed this statutory language to afford the Circuit Court complete power over such orders which, it reasoned, could not "change or modify the express directions of an act of Congress on that subject." *Id.* The Court concluded that:

> "The petitioner having removed his case into the Circuit Court has a right to have its further progress governed by the law of the latter court, and not by that of the court from which it was removed; and if one of the advantages of this removal was an escape from this examination he has a right to that benefit if his case was rightfully removed."

*Fisk*, 113 U.S. at 726; *accord, Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 437 (1974); *e.g., First Atlantic Leasing Corp. v. Tracey*, 128 F.R.D. 51, 54 (D.N.J. 1989) ("Both *Granny Goose* and *Ex Parte Fisk* clearly establish that this court has the statutory authority under Title 28 U.S.C. Section 1450 to modify or dissolve the protective order issued by the State Court."); *Melhelm v. Meijer, Inc.*, 206 F.R.D. 609, 612 (S.D. Ohio 2002) (party could re-propound discovery requests that had been disallowed by state court, as prior "state court ruling has no bearing on the merits of [plaintiff's] post-removal discovery requests," whose propriety would be assessed by district court under federal law).

Some courts have held that once a case is removed to federal court, discovery may not begin until after a Rule 26(f) conference has been held. *Riley v. Walgreen Co.*, 233 F.R.D. 496 (S.D.Tex.2005). "By its express terms, Rule 26(d) bars discovery until after the parties have conferred about a discovery plan as directed by Rule 26(f)." *Id.* As such, pursuant to Rule 26(f), if a conference has not occurred, parties "may not seek discovery from any source" in the absence of a stipulation or court order. *Sterling Savings Bank v. Federal Ins. Co.*, 2012 WL 3143909 (E.D. Wash. 2012) (state court discovery requests no longer operative after removal); *see McIntyre v. K-Mart Corp.*, 794 F.2d 1023, 1025 (5th Cir.1986) (federal limitation on the number of interrogatories applied to invalidate interrogatories served while in state court).

In addition, the automatic adoption of the prior state orders governing discovery and briefing urged upon this Court by Deaver -- at least with respect to production by GCAC -- would undermine the central purpose of CAFA, which is to implement Congress's "strong preference" that putative class actions such as that presented here be litigated in federal court in accordance with federal legal standards. *Hartis v. Chicago Title Ins. Co.*, 656 F.3d 778, 781 (8th Cir. 2009); *Bell v. Hershey Co.*, 557 F.3d 953, 957 (8th Cir. 2009) ("A primary purpose in enacting CAFA was to open the federal courts to corporate defendants out of concern that the national economy risked damage from a proliferation of meritless class action suits. See CAFA, Pub.L. No. 109-2, § 2(a)(2)(B), 119 Stat. 4, 5 (codified as a note to 28 U.S.C. § 1711) ("[T]here have been abuses of the class action device that have adversely affected interstate commerce.")).

Accordingly, this Court should make all the key adjudications in this litigation, including determining the scope of pre-certification discovery and the timing of GCAC's dispositive motions. For this reason, it is particularly important in a case removed under CAFA for the Court to give no deference to prior state court rulings touching on these issues:

"[T]he Class Action Fairness Act provides for federal resolution of the plaintiffs' claims, so *the district court need not (and should not) give any weight to the state judge's order* of default and the scope of the class certification. *These and all other questions are open to independent resolution in the federal forum.*"

*Knudsen v. Liberty Mut. Ins. Co.*, 435 F.3d 755, 757 (7th Cir. 2006) (emphasis added).

Deaver contends (response brief at 3-4) that GCAC's motion constitutes a redundant and impermissible motion for reconsideration. Not so. GCAC's motion asks this Court to apply federal law and federal standards to discovery here, as CAFA contemplates. "A federal court has particularly good reason to reconsider a state court determination where federal standards differ from state law standards on an issue." 14C Wright, Miller et al., Federal Practice and Procedure § 3738 (4th ed.2009). GCAC has never sought this before – how could it? -- as these standards applied only after removal.[1]

Neither the scope nor the timing of the state court's discovery order passes muster under federal standards as they are applied in practice, as numerous federal authorities from within and without the Eighth Circuit establish. The state court ordered that GCAC produce every retail installment contract and every pre-sale notice, for the periods 2009 through 2012, without any redaction, despite the fact that such burdensome discovery does nothing to advance the questions surrounding class certification. Every pre-sale notice has the allegedly offending language in it in some form: requiring that redemption be made by cash or by certified funds; none of the retail installment contracts contains such language. Deaver himself asserts that the documents at issue are "written form contracts" and "written form pre-sale notices" (class action complaint, ¶¶ 29, 30). Production of a thousand form notices adds nothing to the information for class certification

---

[1] While Missouri courts state that their rules, like some others, are patterned after the federal rules, *State ex rel. Coffman Group, L.L.C. v. Sweeney*, 219 S.W.3d 763, 767 (Mo. App. S.D. 2005), in practice their decisions can diverge widely from those in federal court, as Congress observed when it enacted CAFA. *Compare Sweeney with Bird Hotel Corp. v. Super 8 Motels, Inc.*, 2007 WL 404703, *1-3 (D.S.D. 2007).

8

available from the notices already produced. The state court's order went far beyond the discovery permitted in the federal courts, where pre-certification discovery is restricted to those things bearing on that issue. *Stewart v. Winter*, 669 F.2d 328, 331 (5th Cir. 1982) ("In light of the mandate of Rule 23(c)(1) that a certification determination be made 'as soon as practicable after the commencement of [the] action,' we think it imperative that the district court be permitted to limit pre-certification discovery to evidence that, in its sound judgment, would be 'necessary or helpful' to the certification decision.").

. The reasoning of the district court in *Bird Hotel Corp. v. Super 8 Motels, Inc.*, 2007 WL 404703, *1-3 (D.S.D. 2007) is applicable here. There plaintiff brought a putative class action on behalf of hotel franchisees, alleging that a 5% charge by the franchisor for a "Trip Rewards" program breached the franchise agreement. Plaintiff sought production of individualized franchisee information in pre-certification discovery. The Court denied the request:

> "In today's case each potential member of the class possesses a franchise contract. Each potential member of the class possesses the same or substantially the same franchise contract…. While Bird argues '[o]nly those franchisees that actually paid Trip Rewards fees would qualify as members of the class," SMI asserts 'all [franchisees] are subject to the 5% charge related to the Trip Rewards guest loyalty program.' SMI has, therefore, acknowledged that all franchisees are subject to the 5% charge. There is no need for further discovery efforts to determine which franchisees incurred the 5% fee -- they all did.
>
> Bird argues it needs to know the respective amounts of Trip Rewards fees paid by each franchisee to show that its financial stake in the litigation is comparable to other class members 'to establish that [Bird] is an adequate class representative,' and 'to demonstrate that class action litigation is superior to other methods of adjudication' in the event that the amounts paid by other franchisees 'may not be so substantial as to encourage each franchisee to institute its own action.' Bird has not supplied case precedent to support its argument. The argument is not otherwise persuasive enough to prevail. The Eighth Circuit points to the number of persons in the proposed class as the obvious most important element of the numerosity factor. *Paxton v. Union Nat'l Bank*, 688 F.2d at 559…. The total amounts of Trip Rewards fees incurred, the total amounts of Trip Rewards fees paid, the month and the year incurred, and the month and the year paid are not facts upon which certification or non-certification of the class in today's case is likely to depend."

*Bird,* 2007 WL 404703 at *1-3; *e.g., Hart v. Nationwide Mut. Fire Ins. Co.*, 270 F.R.D. 166, 168-69 (D. Del. 2010) (limiting discovery to a representative sample of insurance files, as that was all that was needed to address class certification issues); .*Ingersoll v. Farmland Foods, Inc.*, 2011 WL 1131129 (W.D. Mo. 2011) (limiting plaintiff's discovery to only that which is "necessary" to support a motion for class certification); *Petrone v. Werner Enterprises, Inc.*, 2012 WL 2830949, *2 (D. Neb. 2012) (production of the driving, time and payroll records of ten similarly situated employees denied as beyond the scope of pre-certification discovery); *Dziennik v. Sealift, Inc.*, 2006 WL 1455464, *1-2 (E.D.N.Y. 2006) (where defendant produced sample contracts, plaintiff not entitled, prior to class certification, to discovery of unredacted contracts disclosing names and addresses of other potential class members).

 Deaver has advanced no reason why the production of numerous substantively identical retail installment agreements and pre-sale notices generated by GCAC over a period of four years – Deaver estimates their number in the thousands – would throw light on Deaver's arguments for class certification. No legitimate reason related to class certification has been articulated for their production. *Charles v. Nationwide Mut. Ins. Co., Inc.*, 2010 WL 7132173, *8 (E.D.N.Y. 2011) (denying pre-certification discovery that would reveal potential class members identities, where there has "there has been no showing of a legitimate need for the requested information"). Presumably then, all these contracts and notices are sought by Deaver for two other reasons: to impose an outsized discovery burden on GCAC, and to obtain the names and addresses of other potential class members. Neither of these reasons is a legitimate one. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352-54 (U.S. 1978) (names and addresses of potential class member ordinarily not obtainable in discovery prior to certification). GCAC would be happy to brief this discovery issue in more detail in the more usual context of a motion

to compel – which Deaver has never made -- but believes that the above is sufficient to apprise the court concerning the merits of GCAC's motion to stay or suspend the state court discovery and scheduling orders.

## CONCLUSION

For all the foregoing reasons, Deaver's motion for sanctions is without merit, and should be denied. The court should stay and suspend the state court's discovery and scheduling orders, and set a new schedule in accordance with Fed. R. Civ. P. Rules 16 and 26 and federal law governing class actions.

                                    BROWN & JAMES, P.C.

                                    /s/Timothy J. Wolf
Russell F. Watters,    #25758
Timothy J. Wolf,    ##53099
Robert L. Carter,    #31699
800 Market Street, Ste. 1100
St. Louis, Missouri 63101-2501
314-421-3400; 314-421-3128 – FAX
rwatters@bjpc.com
twolf@bjpc.com
rcarter@bjpc.com
*Attorneys for Counterclaim-Defendant GCAC*

#11123402

**CERTIFICATE OF SERVICE**

      The undersigned certifies that a true and correct copy of the foregoing was sent electronically via the Court's electronic filing system, this 22nd day of April, 2013, which will send notification of such filing to:

Martin L. Daesch
Jesse B. Rochman
Sandberg Phoenix & von Gontard PC
600 Washington Avenue, 15th Floor
St. Louis, MO 63101
314-231-3332; 314-241-7604 (fax)
mdaesch@sandbergphoenix.com
jrochman@sandbergphoenix.com
*Attorney for Counterclaimant Defendant Deaver*

William F. Whealen, Jr.
Miller & Steeno, P.C.
11970 Borman Drive, Ste. 250
St. Louis, MO 63146
wwhealen@millersteeno.com
*Attorneys for Plaintiff GCAC*

                                                  /s/Timothy J. Wolf